The next matter is Foresco vs. Oh. Counsel, you may proceed. Thank you. Good morning, Your Honors. My name is Alicia Hickok. I'm here on behalf of Foresco. I'd like to reserve two minutes for As I was looking at this case, it struck me that there are three things that are actually dispositive of both the enforceability of the guarantee and the consideration. The first of them is the question of definiteness, which is to say that when looking at guarantees under New York law, what they ask for is definiteness in the extent of the obligation. And the reason they do that is so that they can hold a person to what he has committed to and no more. In this case, the guarantee has a definite obligation. It states the dollars, particularly on the face of the document. Secondly, the guarantee is not required to do that, is it? Well, actually, there are cases where they don't state the debt, the amount. They just say all payments or something else. Ordinarily, at a time when a guarantee is uttered, is issued, one doesn't know what the extent of the debt will be at the time that the problem arises. And often they will say all payments under this contract or whatever in order to anticipate that. And that's been determined to be definite in terms of extent. But that extent of obligation is something that is held to be precise. And where that comes up often is in the cases where somebody guarantees a certain debt at a certain point in time and then somebody takes out other notes and then tries to put those other notes under the prior guarantee. And the courts say, well, you can't do that. You've only guaranteed . . . What you're talking about now is not what was involved in this case. What was the issue, whether this could be viewed not as a personal guarantee, but as an undertaking to make sure that the company pays what it needs to pay? Actually, I would reframe that a little bit because the document itself was certainly a personal guarantee. And it was a personal guarantee that was in the name of Mr. O's company to say, well, I as a company, which was in existence in August 2014, and it was its CFO who sent a document . . . And let me get you the And at JA 327, there's a document that was proffered, and it was sent by Mr. Jakers on behalf of Tribeca Gear. And of course, Tribeca is the other name for Flash Ventures. And it was sent on August 1st as a counter to the guarantee that was ultimately signed. And it says, Flash Ventures, Inc. acknowledges its outstanding balance with Foresco Company Limited and commits to completing a good faith discussion on a detailed payment plan and method at the soonest possible time. You're not claiming that's the guarantee, are you? No. That was rejected specifically by Foresco. Foresco said, that does not give a personal guarantee. We need a personal guarantee. After that, they sent back a document that says, I, Albert O, promise to pay Flash Ventures, Inc.'s outstanding balance with Foresco Company Limited. The only thing it left uncertain was the discussions about when the payment method and how it would be paid would be done. That uncertainty, if it's looked at within the context, and I can give you the pages in the record, of what was going on between April and August 2014. Mr. O had multiple ventures. He was trying to start a new company, IQ Licensing. In order to start the new company, he needed to get new financing. In order to get the new financing, he had to take care of the fact that he had an And he knew that he had it. He wrote to his new IQ Licensing partner in April and said, this debt is a problem for me. I need to resolve it, and I need to take responsibility for it. You didn't read, in addition, doesn't it say over his signature or under his signature, a joint surety? It does say that, Your Honor. Just out of curiosity, do you have an idea why does it say joint? I do not have. Your emphasis is on the fact that it says surety. Correct. But you don't know why it says joint? I don't. It was translated from Korean, and I'm not sure what the translation was done and how that was done. But in April, he then enlists Tony Ling, Albert O enlists Tony Ling, who is his to-be partner in IQ Ventures, to help them structure a way to move from a company that was not doing well financially to a company that they expected to do well financially. And in doing that, they came up with a limited partnership. They came up with an LLC. They came up with other structures. And every time, Mr. O said, that's going to mess up our financing. We can't quite do it that way. But I will find a way to get you the equity that will cover the debt I owe you. And that's the context within which this document, in fact, the transmittal letter itself. All that you've just recited designed to tell us why he would sign a guarantee? Is that the point? It's also the definiteness of the guarantee and the consideration. Well, the definiteness must come from the document, doesn't it? And it does come from the document. I promise to pay. All those reasons or not doesn't help us decide whether the district judge was right in thinking it was indefinite, right? It does, Your Honor, because the definiteness needs to be in the promise, in who is promising, and on behalf of whom. And you find that out from the document. And that is absolutely definite in the document. I get that. I understand. I just don't understand why then you tell us all these other reasons why he would want to sign a guarantee. Either he signed something that is a guarantee, or he didn't. And the court found two things. It found that there was an indefiniteness in the time of paying, and it found that there was no consideration. So let's deal first with indefiniteness. He thought the second sentence, which you didn't read, but it's there, of course, in the judge's view, the uncertainty about the payment method rendered the guarantee indefinite. What do you say about that? I say that it does not render it indefinite. And I also say that New York law says specifically that you can have indefiniteness on terms other than the obligation and the promise to pay, and who's making the promise to pay, and on behalf of whom. All four of those elements are clearly on the face of the guarantee. There are things that are far more indefinite, as Your Honour has recognized, where the court says that's perfectly fine. It was perfectly fine to say to a maximum amount of blank in Lone Star and then enforce that guarantee, even though there was a deliberate blank left there. There are cases where they say, you can take and resolve something in steps and in parts, and as long as you are recognizing that those parts are resolved, that is an enforceable contract. What about consideration? The consideration here was that you had, and this is why the April to August is important, you had Mr. O wanting to change companies and change businesses and raise financing. In order to do that, he could not have the enforcement of the debt move him into bankruptcy, and he could not have that debt showing on his due companies balance sheet. That's the whole reason that those negotiations are going on, and it's the reason that Foresco says, I understand what you want and I'm willing to work with you. That's a legal detriment. I'm willing to work with you, and I'm willing to hold off forcing you into bankruptcy so that you can get this new venture if you give me a contract. The letters you've been giving me don't work. They're not adequate. What about the language, I try to finish discussion for detailed payment as soon as possible and promise to implement? Does that have a bearing on consideration? Your Honor, that's actually demonstrating the consideration when taken in the context of the letter that says, look, I need this document to make reference for what we're doing with the limited partnership things. It's what he's saying is we've agreed on equity, we've agreed that we will have this as part of IQ Ventures, we will translate it, but you keep telling me it can't be in this form and it can't be in this form. I'm willing to work with you on that. That's why that willingness to work is the detriment that is consideration. Now, you've told us that the definiteness and perhaps also the consideration is supplied by what you call the context, and you recited a lot of facts. Yes, Your Honor, and under... Those are extrinsic to the document itself. Can we agree on that? Yes, Your Honor, although in Sun Oil, which is the New York State case in 1934 that's been followed all the way up to 2017 by this court and others, it says that it's of necessity that you put a contract and transaction in its context so that you understand what it is that is the intent of the parties. I'm not challenging that. What I'm leading up to is this question. If this turns on the so-called contextual facts, is this something that needs to go to a jury to do some fact-finding rather than a decision as a matter of law? It's possible to conclude that, and I would understand that conclusion. The issue for us isn't whether it's possible, it's whether that's the right thing to do or we don't need to do it. With, under Sun, that context is a little different than finding an ambiguity in the face of a document. If you determine that it's because the document is ambiguous, absolutely it needs to go back to the district court for a trial. That's clear from all the cases. I know your fallback position. Yes. Your first position is it is definite enough even though the payment method is left in doubt. That's correct. I don't understand why you said to Judge Newman in response to his question a couple of questions back that the definiteness comes from extraneous facts. I mean, your position is that you simply look at the document, the document definitively without ambiguity says, I promise to pay and identifies the signer as assuring. That's correct. I think it was the consideration that I meant. Your argument is not that one needs to resort to extraneous facts as to what all this grew out of in order to find definiteness. That's correct. It was as to the consideration that you needed to put it in the context. Isn't it true that neither party after the signing of this agreement never referred to it as a personal guarantee? Your Honor, the parties were both working toward implementing this guarantee afterwards. Yes or no, did anyone refer to it as a guarantee? In the exchange of all the papers and calls? Well, certainly when we were trying to enforce it, yes. Only then? Well, that's only a few months later that we began to enforce it. Once he abandoned the steps that he said he was going to take. All right, thank you. Does New York law require consideration to be recited in a contract? It does for real property, but not for a guarantee. There are two different statutes of frauds. And in a statute of frauds under a guarantee or in answering to the debt of another as the statute uses it, that's 5701. Under that statute, it can be expressed or implied. So you then have to prove up your, you do need consideration, we agree on that, right? Yes, absolutely. So you then have to prove it up from extrinsic evidence. Right, or the context, yes. I'm not sure I agree with that. I'm not sure I agree with that. It seems to me that because of the language, I tried to finish discussion for detail payment method in as soon as possible and promised to implement the as soon as possible. Imagine the circumstance in which immediately after the signing of this document, say the next day your client instituted suit against O to enforce. It seems to me that O would have a defense based on this sentence, that this sentence could be construed and seems to me to mean to imply a promise to on the part of your client to forbear from bringing suit against O for at least as long as to allow these discussions to be done as soon as possible and for him to implement. And if that time passed without anything happening, then your client could sue. But it seems to me there's a strong argument that this implicit in this is an undertaking on the part of your client to forbear for this short time. That's correct. Thank you, counsel. Thank you. We'll hear from Mr. O. Please the court. I am Andrew P. Salidas representing Pele Albert O. In this case, what wasn't mentioned, but is essential to any kind of understanding of this promissory to settle balance is exactly how it was presented at the time and it's undisputed, the very reason for its existence was that Fresco was in the midst of an audit and they told Mr. O, at least a dozen times of what their real problem was, that their balance sheet was going to take a hit on because of... You're saying that their position was to him, sign a guarantee for us that we can show our auditors so that we can get accounting advantages so that we won't be in a bad position with respect to this uncollectible debt. We don't really intend to enforce it against you. We just want to show that we have a guarantee. No, because that's not what was said. They never spoke about it as a guarantee. They never had a contextual discussion about ever... It includes the words, it includes the words, I prefer A, the outstanding balance. That's what they wanted for purposes of their accountant. And I mean, what you're telling us is we don't really intend to make you pay. We just want to have a contract with this so that we can show our accountants and my understanding of the purpose is we don't want to have an uncollectible debt, large debt on our balance sheet. We don't want to have this uncollectible debt to us that will create a big problem for our solvency. Well, that's what they are saying. They don't, for their own purposes, they said, do me a favor, Mr. O, do me a favor, sign this so that we can have something for reference. That was the term, for reference. That the clear words of promise to pay have to be understood as fingers crossed, it really was only intended for something that you show your accountants to solve the problem of an uncollectible big debt on your balance sheet. No, because nothing of that definite sort was presented here. We look exactly to how this thing came into being. Came at one day after a discussion about we have these problems with our auditors, we don't want to take a write down where, for whatever they, for reasons best known to themselves, they need a piece of, they need some. Is that your argument, that if somebody gives a promise to pay in precise terms, but they give it for a reason to satisfy some accountant, then it doesn't count? Is that your position? It's part of it, your honor, because where's the consideration there? Let's stay with that part. What's the basis in law for saying that if somebody signs a piece of paper that commits him, that is a specific contractual undertaking, it's not enforceable if the reason he signed it was to satisfy some other interest? What's the basis for that theory? It goes to the definiteness of the undertaking. No, the definiteness comes from the document. The document itself, as the second sentence shows, provides, leaves open the time of performance, the manner of performance. Yeah, but now you're on to the next point. Let's stay with a definite document. A signs and says, I will pay the $1,000 and I'll pay it in cash and I'll pay it by noon tomorrow. Is that an enforceable promise? Without consideration, no. Is it definite enough? The statement somebody's promising to pay, if that were a promissory note, I mean, a promissory note would be an example similar to what you said. If a promissory note. If it's a promissory note, Judge Newman asks you if the document says, I promise to pay. Is that an, I promise to pay $4,322 on March 1st, March 22nd at noon? Well, if that's the only thing it says, that if the first, if the sentence, if the document ended there. And it says, for value received hereby acknowledged, I promise to pay. Is that a definite contract? Well, we'd have, one would have to, I don't have an answer that satisfies me to your question. Well, how about satisfying me? Mm-hmm. If someone signs a, for value received, I promise to pay, which makes it a negotiable promissory note as far as. No, it doesn't say to the order of. No, don't bring us into another body of law. It's just a piece of paper that says, A promises to pay B a fixed amount in cash at a day certain, and it acknowledges consideration. Is that a contract? In the absence of consideration, no. It says, for value, for $10, receipt of which is hereby acknowledged. I don't believe so, your honor, because what it raises the question, what is, it leaves open the fact of was there consideration? No, it said in it. You didn't, perhaps you didn't hear. Maybe I didn't make it clear. It recites in it, for $10, consideration hereby acknowledged, receipt hereby acknowledged. Says that. A very tough question. Well, it seems to me that that document probably represents a contract. Let's take a document that you would agree is definite enough to be a contract, okay? Just imagine it as you stand there, okay? It's got all the things you say needed to be in a contract. You got it in mind? Okay. Is it not enforceable if the extrinsic evidence shows the parties signed it for reasons other than an expectation of performance? And I think the document suffers from the fact it does not represent a meeting of the parties' minds as to the subject matter of the agreement. Because they had this other motive. Is that right? Yes. So if contracting parties have a motive that arguably indicates they are not serious about enforcement, there's no meeting of the minds. That's your position, right? That's true. There's no meeting of the minds, exactly. So I understand your position to be that if we have this kind of a circumstance where a company has incurred a debt, large debt, one and a half million dollars, to an obligee, and the company can't pay it, and the obligee is in a position in which the presence of this uncollectible debt on its balance sheet is gonna make a big problem for its dealings with the outside world, including, for starters, its auditors who have to certify its balance sheet. And it says to the principal, the principal stockholder or the owner of the company that is the obligor, I need to kind of defraud my accountants and the outside world into making them think that my balance sheet is a lot more solid than it really is. I need to borrow money from banks, and they're gonna ask me, what about this uncollectible debt? It looks like you're insolvent. So I need to be able to show them that this, I need to be able to pretend to them that this is not an uncollectible debt. I need to be able to pretend to them that it is a collectible debt because it's guaranteed by you so that they will lend me money. So will you please sign this promissory note, a note which, as Judge Newman asked you, says all the things that you say need to be in a note to make it sufficiently definitive. So under those circumstances, that note is signed, not with the intention to have it paid, but with the intention to have it used to defraud auditors and banks and so forth. That's not a guarantee. That's not an enforceable guarantee. That's your argument? I agree, that is not an enforceable guarantee. That's your argument. My argument is that in this particular thing, it's neither a guarantee and the consideration there runs the wrong way. It's do me a favor, don't do yourself any favor. You're getting nothing for this. I need your help. Help me out, sign this thing. I need to use it for something over there. Yeah, but the thing is done in such a way, the thing is done in such a way that they want the accountants to be satisfied that it looks enforceable. So it will recite consideration and not only will it recite consideration, but if the party is smart, he'll say, look, I don't want it just to recite consideration. I'm gonna actually give you $10. There's gonna be actually $10 exchange so that there really will be consideration for this phony guarantee intended to defraud others. Your argument is not enforceable, right? My argument is that that would not be enforceable. Right, that's what I thought. I understand your argument. But the real crux of this, I mean, first of all, that document wasn't drafted by Mr. Oh, it was drafted by Mr. Chun. It was presented to him with an email in the context of, we need this for reference because of audit, et cetera. Then the- Fraudulent purposes. Pardon? Fraudulent purposes. It could very well be. Mr. Chun, as the record shows, didn't claim not to have any recollection of what he was doing at the time, but he did express 10 times at least over the course of preceding months. In fact, it was the only context that was presented. Now, so assuming that you are right as to your conclusion of law, is it a matter for summary judgment if the document on its face shows itself to be an enforceable guarantee, but the argument is made that the factual context out of which it arose shows that there was no meeting of the minds. Well, there was a meeting of the minds to a contrary purpose, to a meeting of the minds that this document should be understood by both parties as a phony and not really intending what it says. Is that something that in these circumstances where that hasn't been agreed to, it's amenable to summary judgment? I mean, it's one thing if there's a factual dispute to find that the fraudulent intent, the shared fraudulent intent undermines the ostensible content of the document, but this was a summary judgment. Well, that might be the case if it weren't for the consideration argument, there would be possibly some debate that could go on, jury style debate. However, under Celotex, when we presented in the motion, point blank, there is no evidence of consideration to support this. It is conceded that the consideration is not, pardon? What about right in the document? What about the sentence that I read to your adversary counsel about the agreement that there will be discussions as soon as possible to implement some kind of way out of this? That's not as consideration as a bar. Why isn't that a promise on the part of the party receiving the guarantee that I won't see you tomorrow, I will hold off so that a court, if the suit were brought tomorrow or immediately after signing this document, the argument would be made by, oh, hey, they promised not to sue immediately. This is to give time for discussions. After that, they can sue, but not now. We have Mr. Chung's testimony on that in the record that says, and he was asked in his deposition, was there any discussion about forbearing or lawsuits or enforcement? And he says, essentially, I don't remember, and he comes up with nothing. I don't know. I don't remember. Well. It's in the document. That statement that you refer to, Your Honor, is not a bargain for exchange by any definition of the term. To say, I will do something someday in the future, I promise to implement, is not a bargain for exchange of anything. Supposing the document said, supposing the document said, in consideration of this guarantee, I promise that I will not sue you for at least 30 days to give a chance for us to discuss and work this out. And then the testimony was exactly as you say. There was no bargaining for it. There was no discussion of it. It was just there in the document. That sounds like a forbearance agreement. Is there no consideration in those circumstances? The circumstances you describe, describe a forbearance agreement, as commonly understood. And forbearance agreements can be consideration. But in this case, there's no forbearance agreement, nothing resembling a forbearance agreement, and it's not concurrent. Your point that Foresco didn't agree to forbear, it's just that Mr. O himself talked about forbearance. Well, he never talked about forbearance. That question, that's in the record. You don't regard this as forbearance? No, it's not forbearance. It's somebody says, here, do me a favor. I need this for my auditors. There's no suggestion in the context. Read the second sentence. He's not going to stand ready to pay on day one. Is that fair to say? He says, I try to finish as soon as possible. That's not day one, right? Sure, that's not. So he's not going to pay right away. He's not going to agree to pay right away. Well, he's not going to agree to do anything. Okay, okay. But the creditor did say, that's okay with us. Is that your point? The creditor didn't say anything whatsoever. They took the document and they departed. Your point is, this is not forbearance because the creditor didn't agree to forbear. Is that your point? Well, it would be- It's not a bad point. I don't know why you- No, the creditor didn't, maybe I'm being overly cautious here. That often happens. Yeah. But when something is agreed, it takes two to do that tango. And if someone, and that understanding is not in any way, shape, or form mutual- It's not a decision-making by Mr. Oh. It's not an agreed forbearance by the creditor. That's right. That's your point. And that's why there's no consideration because the creditor didn't agree to forbear. That's right, he's got, to put it more, he's getting nothing for it. But supposing that if we sent this back for trial and a jury hearing all the facts said, well, the creditor didn't sign this as a formal forbearance agreement, but the facts show that the creditor was willing to accept this as a good guarantee with a forbearance. If the facts show that to a jury's satisfaction, might be different, yes? Well, the creditor doesn't- Under Celotex, there would have to be some evidence of such fact to allow one to get past a directed verdict. And in this record, there is an absolute void there. Wait a minute, you don't get to a directed verdict until you have a trial, right? Right, but I'm just applying Celotex. When at the outset of the motion, when we made point one to the motion, there's no evidence of consideration. And it was conceded that the only consideration asserted is quote, concurrent, not past or future or some other. We've been narrowed to concurrent consideration here. Concurrent, you mean agreed to by both sides? No, concurrent meaning simultaneous with the execution of the subject instrument, not past consideration or some future consideration, but concurrent. Pretty concurrent. Right now, the minute he signs it, he's saying there'll be forbearance. No, he's not saying there will be forbearance. He said, I come back to, there was no agreement on anyone's part that there's gonna be, I want you to hold off for a day, week, month, or a year to take action against me. And conversely, I agree to hold off for a week, day, month, or year. We don't get to that. There's absolute indefiniteness to that. I think a forbearance agreement needs slightly more than vague speak about what I hope I might do someday. That can't be a contract. How can one, how could you sue on that contract? Thank you, we'll end here. Thank you, we'll hear from Foresco. You have two minutes for rebuttal. I just would like to call a couple of things to the court's attention in the record. First of all, at JA-229 and JA-230, Mr. Chun's deposition testimony, there are specific places where he talks about the fact that they were considering lawsuits at that point in time until the document was signed. The document was drafted at Mr. O's request by Foresco, Foresco sent it to him to sign. How could the forbearance be binding if the guarantor is the one who forbears? Doesn't the creditor have to be the one to forbear? What the document is doing is acknowledging that the creditor is forbearing. It is the creditor who is forbearing. Foresco has been- Well, that's quite a risk then. So if here, Foresco is owed some money- That's correct. And they say, we want a guarantee agreement. And the guy then goes off to his office and he writes a guarantee agreement and he says, he'll forbear. He didn't talk to Foresco. He just said, I'll forbear. And then he says to himself, they're never gonna get me for that. In this case, Foresco was the one who drafted the agreement at Mr. O's request. So the guarantor asked the creditor to draft an agreement, which he did using Korean forms. You're saying there is available extrinsic evidence that shows Foresco was forbearing because they wanted this kind of language because they drafted it. That's correct. And because they rejected other language. It can't go on summary judgment, can it? I think it can. But I also understand that it may need to be tried. Isn't it extrinsic to this document? I'm sorry, I didn't hear your question. Is it the fact that according to you, Foresco was willing to have the forbearance? Isn't that an extrinsic fact that is not on the face of this document? Your Honor, it depends on the way you view it. Because under, I've got the case, but under several of the cases, you look at all the documents, both signed and unsigned, that form the essence of the transaction. And if you count those documents as including the transmittal letters, if you count those documents as including the rejected prior offers from Mr. O, then I think it is absolutely clear on the face of the document what the consideration was. If you look at those as not being. I have a proposition that if I look at all the other documents, it becomes clear on the face of this document. Is that what you're saying? Well, I'm saying the extrinsic evidence, I would consider in this case to be the negotiations back and forth. That's extrinsic. That's extrinsic. But there are here three documents that could be viewed as proffered contracts or drafts of contracts and the transmittal letters that are sending those documents. Those documents rise to a higher level in. So are you now saying that the district judge on summary judgment had before him, I guess you're saying, undisputed documents and no reasonable jury could fail to find consideration in view of those documents? Is that what you're saying? I believe that that's correct, but I believe that if you look at those as extrinsic evidence and find an ambiguity, that it would have to be resolved by a jury. I don't understand why you don't rely simply. I don't at least argue that you can rely without resort to the other documents on this document, which is ambiguous, but within that ambiguity could lead to construing this sentence. I tried to finish discussion for detailed payment method in as soon as possible and promised to implement that that sentence implies ambiguously an obligation on the part of Foresco to forbear for at least as long as soon as possible encompasses and that you don't need to go to other documents and extrinsic evidence to find a recitation of consideration. Now, of course, it doesn't show it. It doesn't show the consideration with clarity. It could be construed in different ways, but it seems to me that if suit were brought, if suit had been brought the next day seeking to enforce this guarantee. You could raise that as a defense. A defense would be raised that would be arguably viable. It would not be frivolous to say that this sentence should be construed as a forbearance agreement to forbear for a short time so that these discussions could be had. Yeah. No, I agree with that and I agree that you could use it in exactly that way. The only other thing I wanted to clear up, I guess my time's up. Long since. What's that? Sorry. Long since, but make your last point. I was simply gonna say that there were multiple audits going on in 2013. There was an audit. The parties were still transacting business. There was debt going up and down throughout 2014. In 2014, in 2013. 2014, in February, there's another audit. But all of these transactions in the documents we've been talking about are taking place after that audit between April and August. There was nothing fraudulent here. Your adversary characterizes the circumstances as one in which your client was essentially seeking to defraud the world by getting a phony guarantee. What about that? It's absolutely false, Your Honor. Why is it false? I mean, I don't know whether it's false or not, but he says that the evidence would show that this arose out of circumstances in which your client said to him, we can't have this uncollectible debt on our books. It's a big problem for us. We need a piece of paper to show our accountants and the rest of the world that this is not an uncollectible debt, that it's guaranteed. And that's how this circumstance came about. That's how your client came, that's how Mr. O then was induced to sign something that looks very much like a promise to pay because it says I promise to pay. What about that? Does that affect the, if that were true, would it affect the collectability of the guarantee? Well, it's absolutely not true. No, if it were true. We haven't had a trial. If it were true. And came out in trial. There are so few defenses to a guarantee. I don't know that it would affect it if somebody had a bad motive. But in fact, if you look at the documents themselves, in 2013, he's saying what I need is a payment plan because you've incurred debt and I need the debt paid. In 2014, it is a proposition that he will have equity instead of debt. And he says if that's going to work, I need to document that because my auditors will not accept an idea of something without being able to see that there will actually be value. Otherwise, I'm gonna write that debt off. Can I ask one question? Absolutely, Your Honor. Although we've gone on very long. In January 2015, did not Fresco ask Mr. O to sign a guarantee indicating that he didn't believe he already had a guarantee? No, Your Honor. In January 2015, when the promised documents did not come to pass, he sought American counsel. And American counsel said, perhaps if we put something in that is self-executing, that has a confession of judgment clause, that has a number of other things, and drafted a multi-page agreement. In response to which, Mr. O said, my lawyers are looking at it and we will redraft it. But they never did. Thank you. Thank you, Your Honor. Thank you both. Like the argument, we'll reserve decision.